# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2157

_____

United States of America

*Plaintiff - Appellee*

v.

Roman D. Hellems, also known as Jest Roman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 7, 2017
Filed: August 4, 2017

_____

Before SMITH, Chief Judge, SHEPHERD, Circuit Judge, and FENNER,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

Roman D. Hellems was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 120 months imprisonment.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

He now challenges three of the district court's evidentiary rulings at trial. Hellems also claims that the court violated his constitutional and procedural right to be present at trial. We affirm the district court[2] on all grounds and deny Hellems's appeal.

## I. Background

The facts of this case begin with a physical altercation between three men. On the day of the altercation, Hellems called his adult son, DeAndre Brown, and asked to meet him at a park. DeAndre asked Rondale Brown, his brother, to accompany him. DeAndre and Rondale arrived first, followed by Hellems. Hellems then punched both men without provocation and a fight soon broke out.

DeAndre later testified that Hellems had three guns on his person during the fight, but no shots were fired. An eye witness, Shirley Bolden, called for police as the fight continued. She later testified to seeing Hellems with three guns.

Officer Matt Harkin responded to the call for police. Upon his arrival, Officer Harkin saw the three men near a Ford Explorer. On the ground near the Explorer was a Taurus .40 caliber pistol and a nine-millimeter magazine. Officer Harkin ordered the men to the ground, and DeAndre and Rondale both complied. Hellems jumped into the Explorer and fled the park.

Officers Adam Lemek and Sidik Becirovic, driving in separate squad cars, chased Hellems through a residential area. During the chase, Officer Becirovic observed Hellems tossing a black object out of his window. As he drove by that object seconds later, he saw it was a black handgun. The chase continued for several minutes until Hellems stopped, jumped out of the Explorer, and ran into his house.

---

[2]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

A short while later, police arrested Hellems. Officer Becirovic returned to where he had seen the black handgun and recovered a .38 caliber Smith & Wesson revolver.

The next day, Officer Lemek received a report of a firearm located along the route of the previous day's chase. Along the street, near the sidewalk, he located a Hi-Point nine-millimeter pistol without its magazine.

Later, Hellems was charged with felony possession of two firearms (the Taurus .40 caliber pistol and the .38 caliber Smith & Wesson revolver) in violation of 18 U.S.C. § 922(g)(1). Hellems invoked his constitutional right to represent himself. The court appointed standby counsel under the Criminal Justice Act.

During a pretrial conference, the court asked Hellems if he would like to stipulate to element one of the charge—that he had a prior felony conviction—so that the jury would not hear the nature of his prior convictions. Hellems declined, stating that he "would like to invoke all [his] rights on the record [and] remain silent at this point in time."

On the morning of the first day of trial, prospective jurors were brought into the courtroom and seated in the gallery. The district court began to explain the jury selection process when Hellems objected. Hellems proceeded to repeatedly interrupt the court, even after multiple instructions to remain quiet. The court advised Hellems that he would have an opportunity to speak later, and that courtroom procedures required him to remain silent for the time being. Hellems ignored the court and continued to loudly interrupt. The court warned Hellems that if he continued to speak he would be excluded from the courtroom. Hellems replied, "That's fine," and continued to speak. The court removed the prospective jurors from the courtroom and offered Hellems one final opportunity to comply with its instructions. Hellems refused and continued his verbal outbursts. Finally, the court removed Hellems from the room and appointed standby counsel to represent him for the trial. As marshals

escorted Hellems from the courtroom, the court advised that he could return at any time as long as he abided by court rules.

Every half hour for the rest of that day, marshals asked Hellems if he (1) would like to view the trial via closed circuit TV and (2) wished to attend the trial in person. Hellems offered no response to these repeated offers. The next day, Hellems refused to leave his cell at the county jail. The court told the marshals that, under these circumstances, they should not forcibly remove Hellems from his cell. The court did not converse directly with Hellems.

At trial, several eye witnesses and law enforcement officers testified as to the physical altercation and the guns found at the scene. Because Hellems refused to stipulate, the government also presented evidence that Hellems had prior felony convictions. A federal law enforcement agent testified that Hellems was convicted of (1) delivery of a controlled substance and/or possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(3) and punishable by a term of more than one year; and (2) receipt, transportation, dominion, and control of firearms and offensive weapons by a felon, in violation of Iowa Code section 724.26 and punishable by a term of imprisonment exceeding one year. Before this evidence was admitted at trial, Hellems's standby counsel requested that the government stipulate to the prior felony convictions. The government declined to do so in the absence of Hellems's consent to such a stipulation.

After a two-day trial, the jury returned a guilty verdict, finding that Hellems possessed the .38 caliber Smith & Wesson revolver. The jury did not find that Hellems possessed the Taurus .40 caliber pistol. The court delayed sentencing because Hellems again refused to appear in court. Ultimately, the district court sentenced Hellems, in abstentia, to the statutory maximum 120 months imprisonment.

## II. Evidentiary Rulings

Our analysis begins with Hellems's challenge to the district court's evidentiary rulings. "Evidentiary rulings are reviewed for abuse of discretion, and we afford deference to the district judge who saw and heard the evidence." United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017) (internal quotation marks omitted). An appellate court may reverse "only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Picardi, 739 F.3d 1118, 1124 (8th Cir. 2014) (internal quotation marks omitted).

## A. Name and Nature of Prior Felony Convictions

Hellems argues that the district court abused its discretion in allowing the name and nature of his prior felony convictions into evidence. He identifies two reasons why the name and nature should not have been identified. First, the prior conviction for possession of a firearm by a felon—a similar offense to the present charge—would potentially "lure a juror into a sequence of bad character reasoning" and create unfair prejudice in violation of Federal Rule of Evidence 403. See Old Chief v. United States, 519 U.S. 172, 185 (1997). Second, the prior drug conviction is, allegedly, highly prejudicial because it indicates a willingness to break laws. See United States v. Corsmeier, 617 F.3d 417, 422 (6th Cir. 2010). The district court, Hellems continues, should have accepted his trial counsel's offer to stipulate and declined to admit the name and nature of his prior felony convictions into the record.

The first element of 18 U.S.C. § 922(g)(1) is a showing that the defendant has previously been convicted of a crime punishable by a term of imprisonment exceeding one year. See United States v. Daniels, 625 F.3d 529, 532-33 (8th Cir. 2010). "The government need only prove a prior felony conviction—not its specific circumstances." United States v. Jenkins, 792 F.3d 931, 934 (8th Cir. 2015). In Old

Chief, the Supreme Court held that a district court abuses its discretion if it rejects a defendant's offer to stipulate as to his prior felony conviction "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." 519 U.S. at 174. The Court reasoned that the prior-conviction element of § 922(g)(1) raised a substantial "risk of unfair prejudice to the defendant," especially when "a prior conviction was for a gun crime." Id. at 185. Generally, therefore, if a defendant is willing to stipulate to his prior felony conviction, the district court must keep evidence of the name and nature of the conviction out of the record.

The district court did not abuse its discretion in admitting the name and nature of Hellems's prior felony convictions because Hellems never agreed to a stipulation. Old Chief involved a rejection *by the trial court* of the defendant's stipulation to a prior felony, not a rejection *by the defendant* of the trial court's offer to allow a stipulation. Here the district court, at a pretrial conference, asked Hellems if he would like to enter a stipulation so that the jury would not know the name or nature of his prior felonies. Hellems refused. As a result, he lost the protections of Old Chief. When a defendant refuses to stipulate, the government may introduce the name and nature of the prior convictions to prove the prior-conviction element of the charge. See United States v. Banks, 553 F.3d 1101, 1106-07 (8th Cir. 2009). Indeed, testimony at trial revealed only two things about Hellems's prior convictions: (1) their names; and (2) the fact that violation of either was punishable by a term of imprisonment longer than one year. Both are admissible to prove that the prior conviction falls within the ambit of § 922(g)(1). Id. at 1106 (recognizing that the jury needed to hear the names of the prior convictions because federal law excludes certain prior convictions from triggering § 922(g)(1)); United States v. Jones, 266 F.3d 804, 811 (8th Cir. 2001) (permitting testimony about the term of imprisonment exceeding one year because it is an essential element of felony possession of a firearm).

The argument that the district court should have accepted trial counsel's offer to stipulate, without any evidence of Hellems's consent, fails to pass constitutional muster. This court has long held that a stipulation is the "functional equivalent of a guilty plea," requiring the district court "to determine whether [the defendant] knowingly and voluntarily agreed to the stipulation." Cox v. Hutto, 589 F.2d 394, 396 (8th Cir. 1979). To admit into evidence a stipulation without first inquiring into a defendant's knowledge and consent would violate his constitutional rights. Id.; see also Robinson v. Leapley, 26 F.3d 826, 830 (8th Cir. 1994) ("Treating a defendant's admission of his prior offenses as a guilty plea is constitutional so long as the admission was knowing and voluntary."). Hellems never consented to the stipulation, nor is there evidence in the record that trial counsel had his consent to enter into a stipulation. As a result, the district court did not abuse its discretion in refusing to accept trial counsel's offer to stipulate. See United States v. Holman, 314 F.3d 837, 844 (7th Cir. 2002) (noting that trial counsel may not stipulate to a defendant's prior conviction—one of the elements of the offense—absent the defendant's consent).

## B. Admission of Two Prior Felony Convictions

Hellems next argues that the district court abused its discretion in admitting two prior felony convictions when federal law requires just one. The first element of 18 U.S.C. § 922(g)(1) is a showing that the defendant has been convicted of "*a* crime punishable by imprisonment for a term exceeding one year." (emphasis added). Hellems contends that the evidence of a second prior felony conviction was both irrelevant under Federal Rule of Evidence 401 and unfairly prejudicial under Rule 403.

Contrary to Hellems's argument, it is settled law in this circuit that the government can introduce evidence of multiple prior felony convictions. See United States v. Garner, 32 F.3d 1305, 1311 (8th Cir. 1994). We permit the introduction of such evidence "to ensure that the government [can] satisfy its burden of proof in the

event [the defendant is] successful in contesting one or more of the convictions in front of the jury." Jones, 266 F.3d at 812. In Jones, we upheld the introduction of five prior felonies into evidence. Id. at 811-12. Accordingly, the district court acted within its discretion in allowing two prior felony convictions into evidence.[3]

## C. Admission of the Hi-Point Pistol

The last evidentiary ruling challenged by Hellems is the district court's admission of a third gun—the Hi-Point nine-millimeter pistol—into evidence. The Hi-Point pistol was recovered by Officer Lemek the day after the altercation and chase, but did not serve as a basis for the charge of felony possession of a firearm. Because of this, Hellems argues that the gun was irrelevant evidence under Rule 401 because it did not make any fact of the crime charged more or less probable. See Fed. R. Evid. 401(a) ("Evidence is relevant . . . if it has any tendency to make a fact more or less probable than it would be without the evidence."). He further alleges that the introduction of a third gun permitted the jury to engage in bad character reasoning against him. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . .").

Declining to address Hellems's argument on the merits, we find that any error in admitting this evidence was harmless. See Johnson, 860 F.3d at 1145. "An error is harmless if, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." United States v. Adams, 820 F.3d 317, 324

---

[3]Hellems acknowledges, in his reply brief, that Eighth Circuit precedent permits the introduction of multiple prior felony convictions. He asks us to overrule our prior decisions. But "[t]his panel is bound by Eighth Circuit precedent, and cannot overrule an earlier decision by another panel." Wong v. Wells Fargo Bank N.A., 789 F.3d 889, 898 (8th Cir. 2015) (internal quotation marks omitted).

(8th Cir. 2016) (internal quotation marks omitted). As recounted above, the government presented substantial evidence that Hellems possessed the .38 caliber Smith & Wesson revolver. Several eye witnesses testified to seeing Hellems with multiple guns during the altercation with DeAndre and Rondale. DeAndre testified that he had seen Hellems with a revolver just a few days before the altercation. Officer Becirovic witnessed Hellems toss a gun out of his car during the chase. Minutes later, Officer Becirovic retrieved that gun—the Smith & Wesson revolver. In view of this considerable evidence, whatever impact the Hi-Point pistol had on the jury was undoubtedly slight. The jury's verdict, which found that Hellems possessed only the revolver and not the Taurus pistol, reveals how slight the influence of the Hi-Point pistol was. Such a finding marshals against the argument that introducing the third gun encouraged the jury to engage in bad character reasoning. Instead, the jury considered all of the evidence and came to a reasonable conclusion. "[Hellem's] substantial rights were not affected and therefore reversal is unwarranted." Johnson, 860 F.3d at 1145.

### III. Removal of Hellems from the Courtroom

We review the district court's decision to remove a recalcitrant defendant under an abuse of discretion standard. United States v. Ward, 598 F.3d 1054, 1058 (8th Cir. 2010). "This court reviews the lower court's finding of voluntary absence for clear error, and the decision to continue with the trial in absentia for an abuse of discretion." United States v. Washburn, 728 F.3d 775, 786 (8th Cir. 2013). A violation of Rule 43 of the Federal Rules of Criminal Procedure may be subject to harmless error analysis. Id.

Hellems contends that the district court violated his rights under the U.S. Constitution and Federal Rules of Criminal Procedure when the court ordered him removed from the courtroom during jury selection. Hellems submits that his behavior was "merely disruptive" and therefore insufficient to justify removal. See Ward, 598

F.3d at 1058. The court's decision to remove him, he concludes, violated his Sixth Amendment right to be present at every stage of his trial. Hellems further argues the court violated the Federal Rules of Criminal Procedure by allegedly removing him before trial had commenced. See Crosby v. United States, 506 U.S. 255, 262 (1993) (noting that Rule 43 "prohibits the trial in absentia of a defendant who is not present at the beginning of trial"). Lastly, Hellems claims that the district court failed to make a sufficient finding in the record that his continued absence from trial was voluntary.

A criminal defendant has the constitutional right to be present at every stage of his trial. See Ward, 598 F.3d at 1058. But he forfeits that right if, "after he has been warned by the judge that he will be removed . . . he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Illinois v. Allen, 397 U.S. 337, 343 (1970). And trial judges "must be given sufficient discretion" to deal with unruly defendants and maintain the proper dignity and decorum of a courtroom." Id. Though, to be sure, "[b]ehavior that is merely disruptive is insufficient under Allen to justify removal." Ward, 598 F.3d at 1058 (alteration in original) (internal quotation marks omitted). Rule 43 also protects a defendant's right to be present at every stage of his trial. Similar to the Sixth Amendment right, however, "[a] defendant who was initially present at trial" can waive that right "when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom." Fed. R. Crim. P. 43(c)(1)(C).

When a court decides whether to proceed with trial in absentia, it "must determine and make appropriate findings (1) whether the defendant's absence is knowing and voluntary, and (2) if so, whether the public interest in the need to proceed clearly outweighs that of the voluntarily absent defendant in attending the trial." Washburn, 728 F.3d at 786 (internal quotation marks omitted). In addition,

a "district court should, at the time make a record inquiry to attempt to ascertain the explanation for the absence of the accused." United States v. Crites, 176 F.3d 1096, 1097-98 (8th Cir. 1999) (internal quotation marks omitted). "However, it is clear that a violation of Rule 43 may in some circumstances be harmless error." United States v. Wallingford, 82 F.3d 278, 280 (8th Cir. 1996) (internal quotation marks omitted).

After a careful review of the trial record, we determine that Hellems voluntarily forfeited his constitutional right to be present at his trial. Hellems's conduct went well beyond the merely disruptive conduct we found insufficient for removal in Ward. 598 F.3d at 1059 (holding that a defendant loudly conversing with his trial counsel, in the absence of the jury, did not warrant removal). Hellems repeatedly interrupted and objected to every statement the district court made, all in full view of the jury. His unruly conduct prevented the court from continuing the process of jury selection that had just begun. See United States v. Williams, 431 F.3d 1115, 1120 (8th Cir. 2005) (noting that "generally objecting to every question and statement the judge made . . . threatened the continuation of the trial"). When confronted with such disruptive behavior, a court is well within its discretion to remove the defendant. See Ward, 598 F.3d at 1058 (recognizing that we will uphold decisions to remove a defendant from a criminal trial when that defendant's "conduct threatened the court's ability to conduct the trial").

We also dismiss Hellems's Rule 43 argument that he was removed before his trial began. As Hellems admits in his brief, "a trial has commenced when the jury selection process has begun." See United States v. Bradford, 237 F.3d 1306, 1310 (11th Cir. 2001) (internal quotation marks omitted). The record shows the district court brought the jury members into the courtroom, greeted the jurors, and started to explain the case when Hellems began to interrupt the proceedings. We have little trouble finding that these actions constitute the beginning of jury selection and commencement of trial. Thus the district court's removal of Hellems at that time failed to violate Rule 43.

-11-

Turning to the court's decision to proceed with trial in absentia, we find that the record demonstrates Hellems's absence was both knowing and voluntary. When the court warned Hellems that continued disruptions would force the court to remove him, he replied, "That's fine. Exclude me from the court." After the court decided to remove Hellems, it explained that he could return at any time so long as he abided by the court's rules. Hellems responded, "No, I will not." Throughout the first day of trial, marshals asked Hellems every half hour if he would like to watch the proceedings on TV or return to the courtroom. He never gave a response. Then the next morning, he refused to leave his jail cell. These actions represent a knowing and voluntary decision by Hellems to remain absent from his trial. Cf. Crites, 176 F.3d at 1098. We therefore find that the court did not abuse its discretion in continuing the trial in absentia.[4]

Hellems counters with an argument that the district court's reliance on the word of the marshals guarding Hellems, rather than Hellems himself, prevented Hellems from reclaiming his right to be present, resulting in a constitutional violation. Hellems relies on our decision in Ward, where we concluded that the lower court had violated the defendant's Sixth Amendment right, in part, because the judge never conversed with the defendant again after removal. 598 F.3d at 1059-60. Instead, the court relied on defense counsel to act as an intermediary. Id. at 1059. Here, the district court relied on a phone call from the marshals explaining that Hellems refused to leave his cell. The court then told the marshals not to forcibly remove Hellems from his cell.

---

[4]Even if we were to find that the court erred in failing to make a sufficient record regarding Hellems's continued absence, such error was harmless because Hellems has never made a showing, or even attempted to show, that his absence was involuntary. See Wallingford, 82 F.3d at 280 (finding harmless error when the defendant could not show that his absence was involuntary, even assuming that the court had made an insufficient record finding on the issue).

-12-

Hellems's reliance on <u>Ward</u> is misplaced. Our opinion in <u>Ward</u> briefly addressed how to deal with an unruly defendant who refuses to leave his cell. "There may be situations when it is appropriate to obtain a reliable waiver of the right to be present without returning a dangerous or recalcitrant defendant to the courtroom." <u>Id.</u> at 1060 n.4. Considering Hellems's behavior in court the day before, and the marshals' report of his refusal to even leave his cell for the second day of trial, we find no error in the court's decision.

## IV. Conclusion

For all the reasons discussed herein, we affirm the district court and deny Hellems's appeal.

_____